Next case is Hope v. Patrick. Is it Steinle? Yes, ma'am. May it please the court. The district court abused its discretion in dismissing Hope's claims under Rule 41B with prejudice. The use of this draconian remedy was inappropriate for three reasons. First, Hope's conduct was not contumacious because it did not express stubborn resistance to the court's authority or obstinate disrespect for the judicial process. Second, lesser sanctions in the form of a warning or limiting Hope to testify by video would have prompted diligent prosecution of the case. And third, none of the aggravating factors are present here because Hope did not cause the delay, did not intend the delay, and did not prejudice the PCJ guards that led to Judge Albright postponing the trial and ultimately dismissing Hope's case with prejudice. And because the Rule 41B standard was not met, this court should vacate that dismissal. So that's the piece. I'm just really struggling with this. So I'm just envisioning myself as a trial judge. I hear that the plaintiff has gone to the hospital because of his own conduct of swallowing the key and all of that and postpone it. And then down the road I learned that's not true at all. He didn't swallow the key and he wasn't at the hospital. He was sitting in the garage. How do you then say, oh, but that doesn't matter? I'm just struggling with understanding how it doesn't matter that because if he's in the garage ready to come up the stairs or wherever, I don't remember the layout of the court that well, but he's in the garage ready to come into the court. That's really different than he's at the hospital because he swallowed the key. So why did that not make a difference to the trial court? That's exactly our issue, Your Honor. And I would point out that it was a very confusing dialogue that occurred between the TDCJ guards and counsel, including the judge. And I don't want to speak for Mr. Dennis, but I believe I'm correct in saying that none of us knew that Hope was being held in the garage until after the fact. That's exactly why we moved for a continuance, because we were told that he was en route to the hospital or to the prison infirmary so that he could be x-rayed and so that the key could safely be retrieved from his body if he had swallowed it. But once we found out after viewing the video that none of that was true, that made his conduct no longer contumacious. And it makes it obvious that since he was at the court by 845, his actions earlier that morning were irrelevant because they would not have delayed trial. This court has held that contumacious conduct is a high bar to meet. Why didn't that make a difference to the district judge? That's what I'm trying to understand, because this seems like I was told one story the day of trial, and then I'm told a completely different story later. That would be a problem in my head. And so this is a good district judge. Why did he not perceive this as a problem? That's what I'm trying to understand. I mean, I know you can't read his mind. I get that. But I'm just trying to get an understanding of why it made no difference to the district court that this story of the hospital and all that wasn't true. The judge did not think that made a difference because he held that by pulling the handcuffs into his cell early on the morning of transport, that was contumaciousness essentially de facto, and that it was irrelevant that he maybe did not swallow the key and that he ended up appearing in court. He focused on that initial action of pulling the handcuffs in, and that was inappropriate because the entire sphere of conduct that morning demonstrates that Hope was compliant with the officers. The video shows not only his conduct, but also his words state that he had every intention of appearing in trial. He stated that the guards refused to feed him and that he was going to tell the judge about their misconduct when he appeared in court. Why did he shred his shirt? I'm glad you asked about that because that point really demonstrates his desire to try his case and to put forth the most positive impression possible. He shred his shirt because he said it was quote tacky. Then when one of the guards tells him your attorneys have clothes for you to wear in court at the courthouse, these clothes are just for your transport. Hope immediately complies and puts on the shirt. That's evident at minute four. How did he think he was going to appear in court without a shirt? He thought that he was going to have to wear the red button down was provided to him that he did not believe was proper decorum for the court and he states that his thought process. He shredded it so that he was going to appear without a shirt. I mean, what was he thinking? I mean, I don't want to speculate into what he was thinking, but perhaps he thought that there were other shirts. I imagine they have other bench warrant clothes, a wide variety, and maybe he wanted something else that he thought would be more appropriate for the court. He thought if he shredded this one, they bring him something better. That's what I would assume your honor. And to that point, we don't mean to justify Hope's conduct. He certainly was not a model prisoner. I don't think anyone would argue with that, but his conduct in complying with the guards demonstrates that he did have respect for the judicial process and wanted to try his cases. He reasserts that his frustration at not being fed in his affidavit supporting his response to the Rule 41b motion. This demonstrates that he did want to try his claims and he did not mean any disrespect to the court. And to the court's point that Hope started a series of events by pulling the handcuffs into the cell, there are several key events that broke that chain of causation and demonstrate that the Hope first repeatedly states that he flushed the key down the toilet. He then is strip searched twice and submits to the boss body scan, which is specifically designed to detect metal in the body. Once those safeguards were completed, there was no longer a valid concern for the proffered reason that TDCJ guards stated that they believed that Hope had swallowed the key. Appellees admit on page 10 of their brief that it was unsafe to put Judge Albright and others in the courtroom at risk, quote, until the location of the key could be found. And therein lies the problem. The procedural safeguards of strip searching Hope and submitting him to the boss body scan confirmed that he had not swallowed the key. Hope's conduct that he wanted to appear in court and that he wanted to make a positive impression make his case markedly from this court's decision in Samson v. Giles. In that case, the inmate plaintiff stated more than three times as confirmed by the video in that case that he was not going to court. He then refused to submit to strip search procedures. And when he gave sworn testimony to the judge over the phone, he again confirmed that he would not go to court. Those facts. I want to be clear here. There's no dispute now that he went. He went to court. He didn't go in the actual courtroom, but he went to the building or the parking lot or whatever, right? That's correct, Your Honor. He we found out after the fact that he was being held in the garage, but he was not allowed to come into the court based on the TDCJ guards having told the marshals that they believed he had swallowed the key. And that is not true. That's correct. I'm just still it seems to me if he had acted like this on some other random day, just fighting with the guards, the court would not get involved at all in punishing that beyond, you know, if he was pursued for a criminal violation or something like that. So the link to the court here is the delay of the court proceeding, but it wasn't delay because he was there on time. So again, I'm. I'll ask Mr. Dennis about this, but I'm just trying to get an understanding of how this all plays out, because again, I think what he did was wrong. But if it didn't cause a delay of the trial and they knew he hadn't swallowed the key, they even drove him there. So they weren't that afraid. I don't know. That's our exact point, Your Honor. There's a disconnect here. The TDCJ guards have prison disciplinary measures in place that can be utilized to handle and address prisoner misconduct. Rule 41B dismissals with prejudice are a draconian remedy, as this court has stated. That decision on the merits is an inappropriate response to conduct that did not display an abandonment of his claims when the inmate wanted to appear in But even if this court disagrees and holds that Hope's conduct was continuous, the court should still vacate because the district court abused its discretion in holding that lesser sanctions would not prompt diligent prosecution. This court has held that Rule 41B dismissals with prejudice should only be upheld when the lesser sanctions at the court's disposal have proved futile or the court holds they would not prompt prosecution. Why has no one sought to sanction the lawyer who misstated what happened? I don't believe that any lawyer misstated what happened. The guard or whoever. I mean, someone said something that wasn't true. Someone did not say he's in the parking lot or the garage or wherever. Why was that side not sanctioned? Well, there are parties to this case. To be clear, the TDCJ guards that are defendants in this action are different from the TDCJ guards who were transporting Hope. And so that's why we can't really sanction them for that. But it's clear that it didn't justify the dismissal because as you pointed out, we were not given the full story that day. And it was an unfortunate game of telephone, really, where the information that was told by the guards, whether on purpose or inadvertently, gave the misimpression that Hope was being transported for an x-ray and that he had swallowed the key. So you're saying the attorneys for the defendants were also misinformed. So whatever they might have said was not an intentional misrepresentation. And the person who made the intentional misrepresentation isn't anybody before us. So that's the disconnect there. That's correct, Your Honor. And the court should have utilized lesser sanctions here. I'd point out that Hope has never been warned that his conduct at the prison could result in dismissal with prejudice. A warning was not used here. The court simply threw that alternative sanction by the wayside and instead immediately resorted to the most drastic sanction it could, dismissal with prejudice. As this court stated in Dominguez v. Crosby-Tuggs, quote, a court may only bring out the heavy artillery of dismissal with prejudice when lesser sanctions at its disposal have failed to achieve the desired end. Those lesser sanctions were not used here. This was Hope's first instance of any delay or any failure to abide by a court order. He has diligently prosecuted his case, both before he was provided counsel as a pro se litigant, and he's continued to express a sincere desire in his case since counsel was appointed. He has meritful claims that we were ready to present to a jury that he should have had the opportunity to do. And to my third point, even if this court holds that Hope's conduct was contumacious and that the court was correct in failing to use lesser sanctions, this court can still vacate because none of the three aggravating factors are present here. The district court correctly held that the defendants were not prejudiced by any delay because mere inconvenience of having to try the case again does not meet the high bar of prejudice. But the court abused its discretion in holding that Hope caused the delay and that Hope's conduct was intentional. As we've discussed, Hope did not cause the delay. He appeared in court being held in the garage by 845 when jury selection in another case was set to begin at 9. So there was plenty of time for Hope to go through the security procedures and appear at court. Regarding the factor of intentional conduct, Hope's conduct was not intentional because he did not intend the consequences of his action. As this court held in Rogers v. Kroger and Spiroff or v. Lebeau, the intentional conduct factor focuses on whether the plaintiff appreciated the results that would have led to dismissal of his case or even any delay of the court. Hope intended to diligently prosecute his case and made that clear in the video. The appellees claim in their motion to dismiss and in their briefing to this court that Hope was a troublemaker who wanted to annoy and badger the guards and the court through this action. That is not true. Hope wanted to pursue his claims. He has been vehement in wanting to try his case to the jury. If we agree that this was too extreme of a sanction, I'm just saying if, we may or may not, then what is the pathway you would recommend? Because he does, we're not saying no sanction's appropriate. Let's try and figure out what happened. So should we remand for an evidentiary hearing? What would be the right way to approach this? The record is clear enough here, Your Honor, where the court can simply state that the lesser sanction of a warning should be used since this is the first incidence of any problems in this case. If the court doesn't feel that the record is clear enough, we should at least have the benefit of an evidentiary hearing to work out any fact issues that are troubling to the court or the district court level. Because Hope wanted to try his claims and because his conduct was not contumacious, this court should vacate and remand. Thank you. Thank you, Ms. Donnelly. Mr. Dennis. Thank you, Judge Ong. Good morning, everybody. We ask this court to affirm the dismissal of Hope's complaint because his actions were contumacious and lesser sanctions would do nothing in this case. The three aggravating factors are present. Mr. Hope caused this delay. There's prejudice to the defendants that they were there for the trial. He caused the delay given that it was a complete misrepresentation that he was off in the hospital. He was actually in the garage. I will disagree with that. I don't. I think there there there was some confusion by plaintiff's counsel there. They we were all under the impression, as far as I knew, that he was in the van and downstairs because the TTCJ transportation officers were the ones that came upstairs and spoke to all of us, including the U.S. Marshal, was standing right there and said, We got him down there, but we don't know where this key is. We think he's going to go to the hospital. I mean, in other words, the whole point of the delay was that he's on his way to the hospital. That's not the case. That was not the case. That was not. That is not the case. Anywhere in the record, it says, Oh, he's here. He's available. But we just we just think he should be dismissed for consummation's conduct. Unfortunately, there is nothing in the record from that standpoint. There is nothing. It's he he was he was brought because my distinct impression is that the judge was told he had swallowed the key and was going to the hospital. If I'm wrong on that, point me to where there's something else that I need to look at. Your Honor, there is nothing in the record. There's no evidentiary evidence. It's kind of stupid. Sorry, stupid term. But there is no evidence that shows this. This is what was happening in the courthouse with regards to the discussions between the marshals and the judge. I think this is all just briefing by by plaintiff's counsel. And so shouldn't there be an evidentiary hearing? Because if you all don't know what happened, how can we judge whether the proper remedy was effectuated? Well, let me say this. Let me go back to this. It was Mr. Hope's action in stealing that handcuff key that started everything. All right. If he wouldn't have, as Judge Albright said, if he wouldn't have stolen that handcuff key and ruined it and gotten rid of it, however it happened, none of this would have happened. It's his intentional conduct and contumacious conduct that caused all of this. All right. There was confusion at the courthouse. That is the point, is there's confusion at the courthouse. The marshal's service did not know where that key was for sure. And absent knowing where that key is, we're not going to, the judge is not going to put the key in the courtroom. All right. Is the record clear that he said, I did not swallow it, I flushed it? If you watch the video later, he says, it's down the toilet. It's down the toilet. Okay. Fine. It's after the fact we watched the video. Okay. Maybe that's the case. But at the time, we don't know what that was. And we're standing at the courthouse when the judge is standing at the courthouse. On the timeline here, I thought the record reflected, he told his, the gaolers that he, he flushed it. And then they did a body scan and nothing showed up. So why shouldn't that have alleged? Why didn't, why was that not adequate to allay concerns about him swallowing the key? You never know if they can beat the system. And that's the point. Yes, I agree. There's a system in place to make sure to try to say, no, he doesn't have the key. We don't think he does. Okay. But you still don't know a hundred percent. Without a hundred percent, why, why put the court at risk? How do you find out a hundred percent if he has, or if he doesn't have the key? You find the key. Well, when was the key found? When was the key found? I'm sorry. Was the key ever found? I don't know that the key was ever, I don't know that the key was ever found. I'll be honest. I didn't follow up to see whether they put them in a dry cell. And that key opens every set of shackles. It's the same key for all shackles. That is my impression. Yes, your honor. That, that key could be used for anything for, for any handcuff key. So you still have a handcuff key out there as potentially unaccounted for. And frankly, the marshal service, without knowing where that key is, they're, they're, I think they're under an obligation to say, we're not holding this trial right now. And that's what judge Albright ultimately came to was we're not putting this at risk right now. We're not putting myself, the courtroom staff, or most importantly, the, the jurors. Well, he was going to be shackled. So he was going to be shackled in a civil trial. Is that true? Yes, but you have a handcuff key. Those inmates can get out of them. I'm just saying, usually in a criminal trial, the shackles are taken off and he's a plaintiff in a civil trial. Were they going to be required to him to be shackled throughout the civil trial? Yes. Yes, your honor. That's, I mean, that's to the discretion, frankly, in my experience of doing this for 26 years. It's the, it's the discretion of the district court. And I can't cite you the case off the top of my head, but this court has previously found that's, that's to the discretion of the court on how they want to handle their security issues. Sometimes they're shackled legs, sometimes their hands, sometimes both. Okay. But the only way for him to get the key, if he swallowed, is it for to pass through his and so could not a guard had gone with him to the restroom and thereby prevented any ability to pass the key through, pull it out and open up the handcuffs. If he, in fact, swallowed it, it could be somehow he, I don't know, somehow he could have it hidden someplace else on him where he can get access to it. That's the point. They did a strip search of him. Strip searches are not a thousand percent, your honor. And I wish, but I can tell you, so the fact is today might still have the key according to you. And so that, that doesn't help us with the day of the day of, you know, I just looked at your brief, which is not lengthy, which I always appreciate short briefs. There's not a lick of anything contesting the facts alleged by, uh, Mr. Hope. So it's news to me that you're saying, oh no, everybody knew that he was there ready to go and everything's fine. It's just, uh, we just were worried. I don't think it is in my brief, your honor, because I wasn't expecting that to come from the plaintiff's counsel that they were going to say everybody, everybody was under the impression he was on the way to the hospital. From that standpoint, it was, I was under the impression that everybody knew that he was there. If I missed that in their brief, that's my bad. But I will tell you as someone who was standing there, it was my impression that everybody, we knew that he was down there, but the judge was not going to let him up. Page 11 of the blue brief based on representations from the TDCJ personnel scoring hope that hope may have taken possession of and swallowed the key to his handcuffs. And then TDCJ officers were taking hope to a hospital to be x-rayed to determine if the key was in his stomach. I mean, I didn't get that out of the sky. That's been their focus all along. And so, and you did not rebut that in your brief. So I, does this not demonstrate the need for an evidentiary hearing? I don't think, well, it still goes back to his conduct. That's what's the point is we can argue all day. Was he in the hospital? I don't know that. I just don't see that because think about it this way. If he's, let's just say, okay, the plaintiff's counsel or hope's counsel, however you want to call it, I'm sorry. It says he's downstairs. We're ready to go. It's no big deal. Hope didn't know that. That conduct was outside the presence of the court, right? Was that conduct outside the presence of the court? It's outside the presence of the court, Judge. Is that right? I'm sorry, say again, Judge. I'm sorry I missed that. For conduct outside the presence of the court, the court must conduct a hearing before it holds someone in contempt. Is that what we have here? I don't believe so. Since we have a video that already shows what he was doing, I think that's sufficient for the court to be able to look at. The video shows what the video shows. I mean, we all know the Supreme Court said that in Scott versus Harris, you can't contest what's on the video. So Judge Albright already had the video in front of him to see what was going on and what Hope did. And Frank was disrespectful to the court. You have a video of everything that is relevant to the case, whether or not he should be held in contempt. Well, I think we do. I think we have a video of every reason why he should be held in contempt this way, in that what he did at the prison, on the way to the courthouse, he knew he was on the way to court. And then he pulled all these stunts. But the day that the judge made the determination to continue the trial, the judge had not reviewed the video, and certainly counsel for the plaintiff had not reviewed the video, because they would have a very different argument had they seen the video. They would say, you don't have the key. I don't think anybody reviewed the video at that point, to my impression. Okay, so then the key point, what Judge Dennis is speaking to is the day of a decision was made, and then thereafter, based on that decision, he was found to have committed a contumacious conduct. But the decision itself was based on, at least as far as I can tell from the representations that have been made in the briefing to us, was inaccurate and incorrect. If you go back to Judge Albright's dismissal, he says, you know what, regardless of what the story was that day, I've seen what's on the video now, and I saw what he did at the prison. All right, he said what he did at the prison in taking the key, destroying the key, ripping up his shirt, not obeying the orders to move along, causing a disturbance. That was enough for Judge Albright to say, you know what, he had his chance, and he was disrespectful. Regardless of whether TDCJ was successful in getting him there before the court was going to begin, it was still Mr. Hope's key. We can argue all day long on where that key was. He's still the one that made his bed. He started all of this, and I know the plaintiffs want to say, oh, well, he wasn't fed, so he was right for taking that key. Well, you know, the judge himself at ROA 1438 says, upon arrival at the courthouse, U.S. marshals were informed that Hope was suspected to have a handcuffed key and it was assumed that he had swallowed it. After hearing this information, the court decided that the trial must at least be postponed and so on. So the judge was basing it on that information. I realized later on, and that was my question to Ms. Steinle, later on the judge became aware that maybe it was flushed down the toilet and not swallowed, but the day of, he postponed it based on thinking he had swallowed it. Correct, because it was a security issue. He doesn't know, why take a chance at that point? Why take a chance? Again, I go back to a security issue for the judge and for their lawyer, so why take a chance at that point? If he just says, well, you know what, let's just go forward. We don't think he's got it, but we'll give it a chance. I don't think the judge wants to do that. I don't think any of us want to put anybody at risk that way. I don't think he wants, I don't think his own personal counsel should be put at risk. Why could you not have had a guard go with him to the restroom? I'm just still not understanding that. That may not be the critical question here, but I'm trying to understand. I don't, there's a lot of Monday morning quarterbacking that could be done. I get that. But just having, we can always have a woulda, coulda, shoulda, what could we have done? Could we have done something different? But the bottom line is, it's still, we can take the security precautions. We can say, we don't think he's got it. We still don't know where that key is. But he can maybe pull that key somewhat when he's sitting in the courtroom, not even when he's in the courtroom. Judge, not if he swallowed, he could have it someplace else on his body for all we know at that point. We don't know for sure. It was assumed that he swallowed, but maybe he didn't. We don't know. That's the point, Judge Haynes, I keep going back to, is we don't know for sure. There's a lot of things we don't know. I promise you. The one thing we do know is that he sanctioned. Now, I'm not saying you can never do it. I'm not saying it wasn't appropriate here for sure. I'm saying there was no evidence you're hearing where all of this could have been analyzed, including this issue of how reasonable was it for the TDCJ official to claim that he still had the key. Well, let me say this in regards to a lesser sanction. What's a lesser sanction that we could even give him? Okay. Obviously, monetary sanctions do nothing because so that's throw that away. All right. A conditional dismissal or even a dismissal without prejudice. I mean, we're outside. This was on the verge of the statute of limitations when this trial was held because the incident happened on March 7th. I believe March 7th of 2017. All right. As the plaintiffs say in their brief, we don't contest that. We all all of us know here there's two years statute of limitations for 1983 suits in Texas. So we're running up against statute of limitations. We filed our motion to dismiss in mid-February just about a week or so after this. The plaintiffs filed their response in March. The judge decided this in late March. We're outside the statute of limitations. So even if we go to a lesser sanction, it does nothing. Let me ask you this. So the lesser sanction? Okay. Mr. Dennis, what is your best case for the proposition that it is appropriate to dismiss with prejudice or to sanction at all a situation where the conducted issue did not occur in court, did not cause the I believe the Sampson case. I'm sorry? The Sampson versus Castro case. But wasn't that one where he said he wasn't going to go? Well, you know, that yes, okay. He says he doesn't want to go. I think Mr. Hope's actions are indicating that he's not wanting to go. Maybe he didn't verbalize he didn't want to go, but he certainly wasn't acting like he wanted to go. Did you find cases where if a plaintiff does not show up for trial, the district court can dismiss with prejudice? Or do the cases say you have to give him a continuance? I don't have any. I'll be honest. I don't have any case law for you on that one. I don't have it for you on judge. I'd be happy to brief that for you. I would like both sides within seven days to submit no more than a three page letter brief on whether if a plaintiff in a civil case in federal court doesn't show up for trial or is late to trial. And can the district court dismiss the case with prejudice? I you have. You'll have it. Judge Owen. Because I'll be honest with you. I've been in that in all my years. I've been in that situation where I was just discussing with co council this morning. We've all been in that. We've been in that situation where an inmate is simply said, That's it. I'm done. I'm not going. I'm mad. It's the second day. A lot of times, honestly, that happens like on the second day. They just say, Forget it. I can see what's happening. I don't like what's happening. I'm not leaving my cell. And the guards film him saying that, and they bring it to the courthouse. And the judge said he's abandoned his case. I've seen that. There is no showing up here. There is no showing that he said, I don't want to go. I'm not going. I understand you're saying his conduct is that that's your argument. But he never said that. And in fact, he got to the courthouse on time, which is different from these ones where somebody resists going, refuses to go, that kind of thing. I agree that he never said I don't want to go. Okay. And you know what I think is to the TDC Jake guards credit, frankly, that they got him to the courthouse. Because if you watch that video, they have the patients of job with this guy. All right. They got him there. So what were they supposed to do? Say, we're going to ignore a court order and not bring him. They instead, they got him there. They took all their steps that they would normally take. They got him there and then said, we got an issue rather than saying never to the hospital. Did they, I don't believe that they did, but I don't believe that they were going to take him to the hospital and they did not do that. So that does not seem consistent with Joe. Well, the guards at the huge unit, the consistent had the job. I was merely responding to that. I'm not trying to inject religion. You use that phrase. And I said, they misrepresented what happened. This, it was a fluid situation, your honor. It was a fluid situation. There's no indication, frankly, that any of my clients had anything to do with that. Whether the transport officers didn't, um, didn't give the full story or not. Okay. That's up for debate on that. All right. But it's not my client's fault that Mr. Hope caused what happened here. All Mr. Hope's out at the unit at, and let's be honest, how does he know that he's not causing a delay at the court? How did he know what time he needed to be there? We've got your argument. I see my time is up. And we've got your argument. Thank you. Thank you, Joe Jones. Thank you. Thank you, everybody. Just a few points on, thank you. Just a few points on rebuttal regarding the discussion of what counsel knew on the day the trial is set to begin February 4th, 2019. We do have it on the record that on page 1496 on the record of appeal, my co-counsel, Mr. Villareal states, it is my understanding that he is perhaps currently at a hospital being x-rayed for something he may have swallowed. And Judge Albright comically responds, for example, the keys to the handcuffs. So that is what we have in the record regarding what we knew at the time the trial was set to begin. If we ever knew that he had been taken to the courthouse, we were then under the impression that he had left and was going to be x-rayed for his own safety at having swallowed the key. If we had known that he were there, we certainly would have asked to speak to our client or or would have perhaps asked for a different remedy besides continuing the trial to a later date. And we agree with opposing counsel that by use of the video and the affidavits that have been submitted to the court from Lieutenant Voss and Russell Hope Jr., we have enough evidence here to conclude that the dismissal with prejudice was an abuse of discretion because his conduct was not consummation and because a warning should have been utilized. So we don't feel that an any doubt in the court's mind, we would certainly rather have an evidentiary hearing to flesh out any of those remaining factual issues. Regarding the response of the TDCJ guards did not know if the procedures had effectively scanned Hope for a key, that's exactly what those procedures are there for. If they can't be relied on, then why are they even performed? And their actions after they told the story to the judge confirmed they did not believe he had the key or either they completely disregarded Hope's safety by not having him x-rayed. Hope wanted to go to court. He states that in the video. He did not provide some post hoc rationalization for his conduct. He affirmatively states in real-time events that he wants to go to the courthouse to explain to the judge what has required here and there is no consummation conduct. Well, we've lost a little bit of the thread that again, I'm not in any way blessing what he did. I think what he did was wrong, but he said it was inspired or caused by the misconduct he was receiving at the prison because of this lawsuit. So I suppose that's part of what an evidentiary hearing could have explored is the big picture of how he got where he is. Again, not justifying, I don't care how you were treated, that doesn't justify swallowing the handcuff key, throwing it in the toilet, fighting with the guards, any of that. It could unfold some of those issues, but we already know based on what he said in the video and what he swore to in his affidavit. And our position is regardless of what happened there, as we noted, he appeared in court or at the courthouse by 845. So those issues were no longer valid concerns. And there are other alternatives that could have been used rather than dismissal with prejudice. And Chief Judge Owen, we're happy to brief the issue that you mentioned, but I would point out that our briefs note two cases, Rogers v. Kroger and McNeil v. Papasan. In those cases, plaintiffs, not inmates, but plaintiffs, appeared at their trial date and refused to proceed. Instead, each of them sought continuances because they wanted new counsel. The district court in both of those cases dismissed with prejudice, holding that it was contumacious conduct to wait until the day of trial to ask for substitute counsel. And in both of those cases, this court vacated and remanded and held that lesser sanctions were appropriate and that the draconian remedy of dismissal with prejudice was not merited in those cases because while the failure to be ready for trial may be inconsiderate, it doesn't reach the high bar that justifies pouring out the plaintiff's claims on the merits. For those same reasons, Pope's claims should not have been poured out on the merits. He should have had an opportunity to try his issues before the jury. And for those reasons, we respectfully ask that this court vacate and remand the case for further proceedings. Thank you. Thank you. This case is now under submission and the court will take a 10-minute recess.